UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:04-CR-139 |
| | ) | *Judge Edgar* |
| TITUS A. REED | ) | |

**MEMORANDUM AND ORDER**

**I.    Introduction**

Currently pending before the Court are two motions filed by defendant Titus A. Reed ("Reed"):

> (1)    to dismiss Counts One, Two, Three, Four and Five of the Second Superseding Indictment on the ground that said counts are in violation of the Commerce Clause [Doc. No. 102]; and
>
> (2)    seeking samples of evidence for independent testing  [Doc. No. 104].

**II.    Motion to Dismiss Counts One, Two, Three, Four and Five of the Second Superseding Indictment** [Doc. No. 102].

Reed moves for dismissal of Counts One, Two, Three, Four and Five of the Second Superseding Indictment on the ground that the aforementioned counts violate the Commerce Clause [Doc. No. 102].  Counts One, Two, Three and Four of the Second Superseding Indictment charge Reed with the manufacture of marijuana plants on or near various plots of land in Rhea or Bledsoe County, Tennessee, in violation of 21 U.S.C. § 841(a)(1) and either (b)(1)(A) or (b)(1)(B). [Doc. No. 94, pp. 1-2]. Count Five of the Second Superseding Indictment charges Reed with knowingly opening, using and maintaining a place at 602 Old Grandview

Road in Rhea County, Tennessee, for the purpose of manufacturing, distributing and using marijuana in violation of 21 U.S.C. § 856(a) [Doc. No. 94, p. 2].

Relying on the decision in *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624 (1995), Reed specifically asserts that Counts One, Two, Three, Four and Five of the Second Superseding Indictment ". . . simply have nothing to do with commerce. There is absolutely no evidence even alleged in the indictment that these Counts affected interstate commerce." [Doc. No. 103, p. 2].

Further, Reed acknowledges that in *United States v. Tucker*, 90 F.3d 1135 (6th Cir. 1996) and *United States v. Allen*, 106 F.3d 695 (6th Cir. 1997) the Sixth Circuit held that drug trafficking does affect interstate commerce. *Id.* Reed asserts, however, that:

> Counts One through Five do not alleged [sic] any drug trafficking. [Reed] is also aware that Congress made the following finding in 21 U.S.C. § 801(3) that the manufacture of interstate controlled substance affects interstate commerce. This finding, however, is simply not constitutional because there is no clear economic impact of local manufacture not intended for trafficking.

*Id.*

Reed's arguments in support of his motion to dismiss Counts One, Two, Three, Four and Five of the Second Superseding Indictment have been rejected by the Sixth Circuit, other Courts of Appeal and, most recently, by the United States Supreme Court.

In *United States v. Sawyers*, 902 F.2d 1217, 1218 (6th Cir. 1990), *cert. denied*, 501 U.S. 1253, 111 S. Ct. 2895, 115 L.Ed.2d 1059 (1991) the defendant was convicted of knowingly and intentionally manufacturing 1,251 marijuana plants in violation of 21 U.S.C. § 841(a)(1). He challenged his conviction on direct appeal on various grounds including an argument that "because []his marijuana was grown in Kentucky and there was no proof that it left the state or was intended for interstate shipment, no federal criminal jurisdiction existed."

*Id.* at 1221. Relying on its earlier decision in *United States v. Scales*, 464 F.2d 371 (6th Cir. 1972), the Sixth Circuit rejected Sawyers' argument. It first noted that no relation to interstate commerce need be shown to sustain a conviction under 21 U.S.C. § 841(a)(1). *Sawyers*, 902 F.2d at 1221 (citing *Scales*, 464 F.2d at 373). The Sixth Circuit further held that Sawyers' conviction under 21 U.S.C. § 841(a)(1) did not exceed Congress' power under the Commerce Clause because in regulating the intrastate manufacture of marijuana plants it was regulating an intrastate transaction which was so commingled with or related to interstate commerce, that it must also be regulated if interstate commerce was to be effectively controlled. *Sawyers*, 902 F.2d at 1221 (citing *United States v. Darby,* 312 U.S. 100, 121, 61 S. Ct. 451, 460-61, 85 L.Ed. 609 (1941)).

In *United States v. Proyect*, 101 F.3d 11 (2nd Cir. 1996), the defendant pled guilty to a charge of manufacturing more than 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1). *Id.* at 12. On direct appeal, he then challenged his conviction on the ground that Congress in passing 21 U.S.C. § 841(a)(1) exceeded the scope of its powers under the Commere Clause of the Constitution, U.S. Const. art I, § 8, cl. 3. *Id.* In challenging the validity of 21 U.S.C. § 841(a)(1), Proyect specifically argued that based upon the decision in *United States v. Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 131 L.Ed.2d 626 (1995), Congress had exceeded its authority under the Commerce Clause in enacting 21 U.S.C. § 841(a)(1) "because the statute criminalize[d] the manufacture of marijuana without requiring an intent to distribute it in commerce . . ." *Id.*

In rejecting Proyect's argument, the Second Circuit stated that every court which had considered the issue, both before and after the *Lopez* decision, had concluded that 21 U.S.C.

§ 841(a)(1) was a valid exercise of the Congressional commerce power. *Id.* at 13 (citing *United States v. Edwards*, 98 F.3d 1364, 1369 (D. C. Cir. 1996); *United States v. Kim*, 94 F.3d 1247, 1249-50 (9th Cir. 1996); *United States v. Bell*, 90 F.3d 318, 321 (8th Cir. 1996); *United States v. Lerebours*, 87 F.3d 582, 584-85 (1st Cir. 1996); *United States v. Wacker*, 72 F.3d 1453, 1475 (10th Cir. 1995), *cert. denied*, 519 U.S. 848, 117 S. Ct. 136, 136 L.Ed.2d 84 (1996); *United States v. Leshuk*, 65 F.3d 1105, 1111-12 (4th Cir. 1995); *United States v. Scales*, 464 F.2d 371, 375 (6th Cir. 1972)).

In reaching its decision, the Second Circuit stated that nothing in *Lopez* changed the "long-standing doctrine that 'Congress may regulate activity that occurs wholly within a particular state if the activity has a sufficient nexus to interstate commerce.'" *Id.* (quoting *United States v. Genao*, 79 F.3d 1333, 1337 (2nd Cir. 1996)). The *Proyect* court further stated that

> In the case of section 841(a)(1), the class of regulated activities, even if narrowly defined as the manufacture of controlled substances, undoubtedly has a substantial impact on interstate commerce. . . The fact that certain intrastate activities within this class, such as growing marijuana solely for personal significant consumption may not actually have a significant effect on interstate commerce is therefore irrelevant.

*Id*, 101 F.3d at 13-14.

Essentially the same decision was reached by the Supreme Court in its recent decision dealing with the issue of medical marijuana, *Gonzales v. Raich*, ___ U.S. ___, 125 S. Ct. 2195, 73 U.S.L.W. 4407 (2005). The issue presented in *Raich* was whether the Congress pursuant to the Commerce Clause had the power to prohibit the local cultivation and use of marijuana under California law – *i.e.*, to prohibit the use of medical marijuana. *Raich*, ___ U.S. ___, 125 S. Ct. at 2199. In answering that question in the affirmative, the Supreme Court noted that in 1970, the Congress passed the Comprehensive Drug Abuse Prevention and Control Act and that Title II of

4

Comprehensive Drug Abuse Prevention and Control Act, the Controlled Substances Act ("CSA"):

> repealed most of the earlier antidrug laws in favor of a comprehensive regime to combat the international and interstate traffic in illicit drugs. The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances. Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels.

*Id.*, 125 S. Ct. at 2203.

The *Raich* Court further noted that to effectuate its goals:

> Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA, 21 U.S.C. § 841(a)(1), 844(a). The CSA categorizes all controlled substances into five schedules. § 812. The drugs are grouped together based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body. § 811, 812. Each schedule is associated with a distinct set of controls regarding the manufacture, distribution, and use of the substances listed therein. §§ 821-30 . . . In enacting the CSA, Congress classified marijuana as a Schedule I drug. 21 U.S.C. § 812(c) . . . By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration pre-approved research study. §§ 823(f), 841(a)(1), 844(a) . . . .

*Id.*, 1256 S. Ct. at 2203-2204.

In rejecting the respondents contention that "the CSA's categorical prohibition of the manufacture and possession of marijuana as applied to the intrastate manufacture and possession of marijuana for medical purposes pursuant to California law exceeds Congress' authority under the Commerce Clause," *id.* 2204-2205, the *Raich* Court stated:

> Our case law firmly established Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. See, *e.g.*, . . . *Wickard v.*

5

*Filburn*, 317 U.S. 111, 128-129, 63 S. Ct. 82, 87 L.Ed. 122 (1942). As we stated in *Wickard*, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Id.* at 125, 63 S. Ct. 82. We have never required Congress to legislate with scientific exactitude. When Congress decides that the "'total incidence'" of a practice poses a threat to a national market, it may regulate the entire class . . . In this vein, we have reiterated that when "'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statue is of no consequence.'" *E.g.*, *Lopez*, 514 U.S. at 558, 115 S. Ct. 1624 . . . .

The similarities between this case and *Wickard* are striking. Like the farmer in *Wickard*, respondents are cultivating for home consumption, a fungible commodity for which there is an established, albeit illegal, interstate market. Just as the Agricultural Adjustment Act was designed "to control the volume [of wheat] moving in interstate and foreign commerce in order to avoid surpluses . . ." and consequently control the market price, *id.*, at 115, 63 S. Ct. 82, a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets . . . In *Wickard*, we had no difficulty concluding that Congress had a rational basis for believing that, when viewed in the aggregate, leaving home-consumed wheat outside the regulatory scheme would have a substantial influence on price and market conditions. Here too, Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control would similarly affect price and marked conditions . . . .

*Id.*, 125 S. Ct. at 2205-2207.

Thus, the *Raich* Court stated that

In assessing the scope of Congress' authority under the Commerce Clause, we stress that the task before is a modest one. We need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a "rational basis" exists for so concluding. *Lopez*, 514 U.S., at 557, 115 S. Ct. 1624 . . . Given the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere, 21 U.S.C. § 801(5), and concerns about diversion into illicit channels, we have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA . . .

6

*Id.* at 2208-2209.

Finally, the *Raich* Court distinguished the factual situation in *Lopez* from the factual situation in a case involving the manufacture, possession and distribution of marijuana:

> Unlike those at issue in *Lopez* and *Morrison*, the activities regulated by the CSA are quintessentially economic. "Economics" refers to "the production, distribution, and consumption of commodities." Webster's Third New International Dictionary 720 (1966). The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market. Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product. Such prohibitions include specific decisions requiring that a drug be withdrawn from the market as the result of the failure to comply with regulatory requirements as well as decisions excluding Schedule I drugs entirely from the market . . . the CSA is a statute that directly regulates economic, commercial activity . . . .

*Id.*, 125 S. Ct. at 2211.

Thus, Reed's arguments that the crimes charged in Counts One, Two, Three, Four and Five of the Second Superseding Indictment should be dismissed because they exceed Congress' authority under the Commerce Clause are misplaced. These arguments have been rejected by the Sixth Circuit in *Sawyers* and soundly rejected by the Supreme Court in *Raich*. Contrary to Reed's assertions, the crimes he is charged with in Counts One through Five of the Second Superseding Indictment do have a connection both to commerce and interstate commerce because there is a ready market for the manufacture and distribution of illicit drugs such as marijuana and the manufacture and distribution of marijuana is a commercial activity. Further, as the decision in *Raich* makes clear, even assuming arguendo that Reed's actions in manufacturing marijuana plants and in maintaining a location for the manufacture and distribution of the marijuana was a distinctly local activity – *i.e.*, was solely limited to intrastate

7

commerce – it still falls within the ambit of Congress power to regulate interstate commerce in illicit drugs under the Commerce Clause.

Accordingly, Reed's motion to dismiss Counts One, Two, Three, Four and Five of the Second Superseding Indictment on the ground that said Counts are in violation of the Commerce Clause [Doc. No. 102] is **DENIED**.

**III.     Motion Seeking Samples of Evidence for Independent Testing** [Doc. No. 104].

Reed has moved to demand samples of the alleged marijuana plants which have been tested by the government and which are intended to be introduced into evidence at his trial [Doc. No. 104]. Specifically, Reed states that his motion is addressed to Counts One through Four of the Second Superseding Indictment. *Id*.

Reed's request to conduct an independent chemical analysis of any alleged marijuana that the government intends to introduce into evidence is consistent with the purpose of Fed. R. Crim. P. 16(a)(1)(C). See *United States v. Kelley*, 120 F.R.D. 103, 108-09 (E.D. Wis. 1988). Accordingly, Reed's motion seeking samples of evidence for independent testing [Doc. No. 104] is **GRANTED** subject to the following conditions pursuant to Fed. R. Civ. P. 16(d)(1). First, the government is **ORDERED** to supply Reed's defense counsel with sufficient samples of the alleged marijuana intended to be introduced as evidence to allow a qualified independent chemist to perform a chemical analysis. It is further **ORDERED** that the examination and testing of the alleged marijuana samples shall take place in the presence of a law enforcement officer/agent designated by the United States Attorney for the purpose of preserving the chain of custody and the admissibility of the evidence and, after completion of the testing, any residue remaining shall be given to the designated law enforcement officer/agent in order to ensure

recovery by the government. *See United States v. Pollock*, 402 F. Supp. 1310, 1312 (D. Mass. 1975). In addition, it is also **ORDERED** that any expert selected by the defense to conduct the testing must be authorized under the laws of the United States to possess controlled substances. Finally, in order to preserve the current trial date of September 20, 2005, Reed shall have all testing completed and shall provide an expert written report on the results of his independent testing of the alleged marijuana samples to the government as soon as is reasonably practicable, but in any event no later than **Friday, August 19, 2005.**

        SO ORDERED.

        ENTER this *1st day of August, 2005*.

        */s/ R. Allan Edgar*
        R. ALLAN EDGAR
        CHIEF UNITED STATES DISTRICT JUDGE