UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TITUS REED,                            )
                                       )
v.                                     )        No. 1:07-cv-59/1:04-cr-139
                                       )        *Judge Edgar*
UNITED STATES OF AMERICA,              )
                                       )

## MEMORANDUM

Federal prisoner Titus Reed ("Reed") moves for post-conviction relief pursuant to 28 U.S.C. § 2255 (Crim. Court File No. 148). Reed contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. Reed contends that both of his attorneys, Mr. Jerry Summers ("Mr. Summers"),who represented him during the suppression hearing, as well as subsequent counsel, Mr. Douglas Trant ("Mr. Trant"), who represented him during the remainder of his federal criminal proceedings, were constitutionally ineffective. The United States opposes the motion.

After reviewing the record, the Court concludes that Reed's § 2255 motion will be **DENIED**. The record conclusively shows that Reed is not entitled to any relief under 28 U.S.C. § 2255. Thus, there is no need for an evidentiary hearing. Because the Court concludes that an evidentiary hearing is not warranted and Reed's § 2255 motion will be denied, both of his motions to expedite requested evidentiary hearing are **DENIED as MOOT** (Crim. Court File Nos. 154 & 156).

## I.       Standard of Review

This Court must vacate and set aside petitioner's sentence upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or

1

otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, ..." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the petitioner is not entitled to relief. If it plainly appears the petitioner is not entitled to relief, this Court may summarily dismiss the § 2255 motion under Rule 4.

When the alleged error is neither jurisdictional nor constitutional, then the alleged error must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (citations omitted). The standard of review for nonconstitutional claims is that claims not raised at trial or on direct appeal are waived for collateral review under § 2255 unless the errors amount to a denial of due process. *Grant v. United States*, 72 F.3d 503 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). Society has a substantial interest in the finality of judgments, therefore, collateral relief is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Id*. at 506, citing *Reed*, 512 U.S. at 354-55. "Nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." *Grant*, 72 F.3d at 506.

## II.    Procedural History

On or about February 9, 2005, a grand jury for the Eastern District of Tennessee named Reed in a single-defendant, nine-count indictment (Crim. Court File No. 44). Reed's trial was scheduled to begin on September 20, 2005, but he decided to enter into a plea agreement with the government.

On September 21, 2005, Reed entered guilty pleas to manufacturing 100 or more marijuana plants (Court Two), manufacturing 1,000 or more marijuana plants (Court Four), maintaining a drug residence (Count Five), Possession with Intent to Distribute Marijuana (Count Six), Felon in Possession of Firearms (Count Seven), Possession of Firearm in Furtherance of a Drug Trafficking Crime (Count Eight), and Two Counts of Evading Reporting Requirements (Counts Nine and Ten) (Crim. Court File No. 124, 139). Because of the statutory mandatory minimum sentence, the effective Guideline range was 180 months. Reed agreed to pay $391,500.00 in lieu of the forfeiture of his real property and he was sentenced to the statutory mandatory minimum of 180 months, a supervised release period of five years, and fined $10,000.00. Judgment was entered on March 17, 2006 (Crim. Court File No. 139). Reed waived his right to appeal his convictions or sentence, thus the judgment was considered final on March 31, 2006. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) ("an unappealed federal criminal judgment becomes final ten days after it is entered").

Reed, through counsel, timely filed this § 2255 motion (Crim. Court File No. 148).

## III. Facts

The following summary of the facts comes from the factual basis admitted by Reed at his rearraignment proceeding and the offense conduct contained in his Presentence Investigation Report ("PSR") (Crim. Court File No. 126). On August 26, 2004, Sheriff Mike Neal of the Rhea County Sheriff's Department received information that some marijuana was growing wild on land in Rhea County. Sheriff Neal and other officers, riding on four-wheelers, drove onto Reed's Sabo Road property and found a patch of marijuana growing on his land. There were 25 plants per row and each plant was 12 feet or more in height. A small starter box was found by the marijuana. A starter

3

box is a wooden frame box with a screen over the top that allows small plants to grow without being interfered with by animals or other creatures out in the woods. The Sheriff and his officers pulled up approximately 400 marijuana plants at this time and then resumed their normal business (Crim. Court File No. 126, pp. 29-30).

On September 2, 2004, more information was received that marijuana was growing on property owned by Reed. Law Enforcement went to a location off Baker Lane in Rhea County and walked in the woods when they smelled marijuana and found a patch growing inside a fenced-in area and another patch at an unidentified location. Law Enforcement set up surveillance with the Hamilton County officers and waited overnight. A federal search warrant was requested for the Sabo Road and Baker Lane properties, as well as Reed's Grandview property.

On September 3, 2004, they received and executed the search warrant. One thousand, two hundred and fifty-nine plants were found on the Baker Lane Property. These plants were 12 to 15 feet in height and some of the plants had their leaves stripped where they had been cultivated (Crim. Court File No. 126, p. 30). The search of Reed's home at Old Grandview revealed more than 70 marijuana stalks stripped of leaves in various degrees of decay throughout the property—some next to his house and others next to a fenced-in area. Inside the house they found a book entitled The Marijuana Growers Guide; a set of triple beam scales; finger scales; marijuana seeds in a Ziploc bag in the freezer; marijuana in a Ziploc bag in the refrigerator; almost a pound of marijuana in a Ziploc bag in one of the cabinets; numerous bags and a tarp with marijuana residue; two way radios; four firearms that were manufactured outside of the state of Tennessee; approximately $5,000.00 in cash; and a Governor's Task Force on Marijuana Eradication ball cap.

4

The search also revealed that Reed had purchased land and other items for cash in excess of $580,000.00 over the previous eight years. Reed's tax records for 1997 through 2003 were seized. Reed's income consisted of rental income and federal farm subsidy payments averaging $7,000.00 per year. He also reported having a gambling income of $90,500.00 during the years of 1998 through 2002. However, during the same time period, Reed purchased at least 513 acres of real estate in Rhea, Bledsoe, and Cumberland counties. Reed purchased these properties using cash. Some of these purchases included 132.1 acres for $116,000 (paid in $100 bills), 126.97 acres for $220,000.00 (paid in $100 bills), and 91.81 acres for $40,000.00 (paid in $100 and $50 bills).

In addition, in January of 2003 Reed purchased a mobile home for $34,000.00. Over a five-day period, Reed made cash payments for under $10,000.00 for the home. Reed made the payments under $10,000.00 to avoid the reporting requirement under Sections 5324 and 5331. Nevertheless, that business did file a Form 8300 with the IRS and sent notice of the fact to Reed. Reed also made three $5,000.00 deposits in his AmSouth Bank account on August 4, 10, and 17, 2004, and that money, along with another quantity of money, was used to cut a cashier's check on August 23, 2003. By staggering his deposits, Reed structured the transaction so that a report did not have to be filed.

Prior to this arrest, Reed was a convicted felon by virtue of felony convictions in Rhea County in 1988 for possession of marijuana with intent to sell or deliver, and a 1991 Williamson County felony conviction for conspiracy to possess marijuana and possession of marijuana with intent to sell greater than 10 pounds.

## IV.    Analysis of Claims

Reed raises five instances of alleged ineffective assistance of counsel in his § 2255 motion. Reed was initially represented by Attorney Summers. After the suppression hearing, Attorney

Summers was replaced by Attorney Trant. Reed claims he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution because Attorney Summers failed to properly prepare for the suppression hearing and failed to discuss a "privately negotiated" plea agreement with him. Additionally, Reed claims he was deprived of his right to effective assistance of counsel because Attorney Trant failed to have certain marijuana plant samples tested; failed to adequately explain the plea agreement to him; and failed to have him medically evaluated after he fainted during the rearraignment hearing.

### A.    *Ineffective Assistance of Counsel*

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that

the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel,

even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

As an initial matter, the Court observes that Reed has failed to meet the prejudice prong as to any of his five claims of ineffective assistance of counsel because he has failed to allege, much less demonstrate, a reasonable probability that he would have gone to trial but for counsel's alleged errors. Indeed, the only relief Reed requests is that the Court re-sentence him. Thus, Reed has failed to demonstrate any resulting prejudice as a result of counsel's alleged ineffective assistance. Furthermore, as explained below, Reed has failed to demonstrate counsel was ineffective.

### 1. Counsel's Alleged Failure to Prepare for the Suppression Hearing

Reed contends Attorney Summers failed to prepare for the suppression hearing because he failed to personally visit the physical areas where the marijuana was allegedly located in Rhea County, despite Reed's requests for him to do so. Reed also complains that counsel failed to

schedule and attend appointments with Reed's brother and his local attorney to discuss strategy for the suppression hearing. Reed contends that had counsel visited the location and attended appointments he would have been able to "refute the government's misinformed reliance as to certain map location areas they attributed to Reed." (Crim. Court File No. 153).

Reed has failed to specifically allege any deficiency by Attorney Summers or any resulting prejudice. Reed does not explain what information counsel would have gained had he physically visited the Rhea County property or attended appointments with Reed's brother and local attorney that would have altered the outcome of the suppression hearing. Absent a showing of what information counsel would have gleaned had he personally visited the property or attended the meetings, Reed has failed to demonstrate counsel's performance was deficient. Moreover, Reed has failed to establish that, but for counsel's failure to visit the property and attend the appointments, the result of the suppression hearing would have been different. In addition, the suppression issues were fully re-litigated after Attorney Trant was retained. The Court reconsidered in detail its prior rulings in light of new facts and renewed arguments presented by Attorney Trant and again found that suppression was not warranted. Thus, even if Attorney Summers' performance during the suppression hearing was deficient, Reed cannot establish prejudice in light of the thorough and total re-litigation of the suppression issues by Attorney Trant. Therefore, Reed has failed to satisfy either prong of the *Strickland* test and he is not entitled to relief on this claim.

2.    *Privately Negotiated Plea Agreement*

Reed claims Attorney Summers rendered constitutionally ineffective assistance of counsel because he allegedly "privately negotiated a plea agreement" without discussing it with Reed. As the government points out, there can be no "plea agreement" if the defendant does not know about

8

it. Rather, Reed is apparently complaining that Attorney Summers failed to inform him of plea discussions. Reed claims that had he known about the plea discussions he could have "been in a more informed and enlightened position to aid Trant in Trant's discussion of same with the government prior to its submission to the Court on September 21, 2005." (Crim. Court File No. 153). Beyond these conclusory statements, Reed gives no explanation of the terms of the plea discussion or how knowing about it would have specifically benefitted him.

It is well-settled that a criminal defense attorney has a legal, ethical, and professional duty to communicate and advise his client of the existence of any plea offers. *See United States v. Gordon*, 156 F.3d 376, 380 (2nd Cir. 1998) (noting that a failure to inform a client of a bona fide plea offer would constitute an egregious professional error on the attorney's part and prejudice the client if it affected the outcome of the case). As Reed has not provided the terms of the alleged "privately negotiated plea agreement" that was not "divulged to or discovered by Reed until he subsequently terminated Summers and hired Douglas A. Trant[,]" the Court is unable to conclude that there was a "privately negotiated plea agreement." (Crim. Court File No. 153, p. 10). Reed has neither submitted an affidavit by Attorney Summers or Attorney Trant detailing the alleged privately negotiated plea agreement nor provided the details of the alleged plea which he discovered after he terminated Attorney Summers and hired Attorney Trant. Thus, Reed has failed to meet his burden as he has not established, by a preponderance of the evidence, that a plea was negotiated or offered by the government. Such a factually unsupported allegation fails to establish that an offer, formal or otherwise, had been made. Therefore, this allegation is factually unsupported and does not provide grounds for relief under § 2255 .

While the government asserts this allegation lacks any credibility, it never asserts in its reply

whether plea discussions occurred between them and Attorney Summers. However, even assuming such discussion took place or that a plea was offered, Reed, by his own admission, discovered the plea agreement after Attorney Summers was terminated and Attorney Trant was hired (Crim. Court File No. 153, ,p. 10). Reed does not contend that Attorney Summers rejected the alleged plea agreement without his knowledge or that the government withdrew the alleged plea agreement after Reed discovered the plea agreement. Consequently, Reed has failed to demonstrate how any plea discussion or offer between Attorney Summers and the government in anyway negatively affected the outcome of this case.

In summary, not only has Reed failed to establish that there was a "privately negotiated plea agreement," Reed has failed to present any evidence that Attorney Summers' performance with respect to plea discussions or a plea agreement, assuming there were such discussions or an agreement, was deficient or resulted in any prejudice to him. Accordingly, Reed is not entitled to any relief on his factually unsupported claim that counsel failed to inform him of a "privately negotiated []plea agreement."

### 3. Attorney Trant Failed to Independently Test Certain Marijuana Plants

Reed claims Attorney Trant rendered constitutionally ineffective assistance of counsel because, although the Court granted his motion to provide the marijuana samples for independent testing, trial counsel failed to obtain the samples and have the tests conducted. Reed claims that "[h]ad Trant been effective in pursuing this important inquiry;[sic] it potentially could have proven that the then destroyed marijuana plant samples either came from property not owned or controlled by Reed and/or the subject marijuana plant samples were improperly taken without legal authorization prior to the execution of the Search Warrant and subsequently Reed would not have

been held accountable for this marijuana." (Crim. Court File No. 153, p. 11).

On August 1, 2005, the Court granted Reed's motion seeking samples of evidence for independent testing and directed him to provide an expert written report on the results of the testing to the government no later than Friday, August 19, 2005 (Crim. Court File No. 109). After writing the government a letter about the independent testing on August 10, 2005, it appears that Attorney Trant decided not to pursue the independent testing (Crim. Court File No. 156-3, p. 12). Approximately one month later Reed filed a notice of his intention to enter a guilty plea (Crim. Court File No. 122).

The burden is on Reed to demonstrate that Attorney Trant's actions were not "the result of reasonable professional judgment" as required by *Strickland*. Reed has not met his burden. Although Reed contends the government ignored the Court's August 1, 2005 Order, Attorney Trant's August 10, 2005 correspondence indicates he was in the process of coordinating the independent testing with the United States Attorney's Office and the agent. That is the extent of the credible evidence reflecting Attorney Trant's performance on this issue. Reed has not submitted an affidavit from Attorney Trant to support his factually baseless allegations that the "government in essence **ignored** the Court Order" and "the government made a concerted effort to not turn over the marijuana samples as **Ordered** by the Court." (Crim. Court File No. 156, p. 4). Moreover, there is absolutely nothing before this Court reflecting that Attorney Trant's handling of the independent testing was not the result of reasonable professional judgment.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete

11

investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. As the *Strickland*

court observed:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Id.* at 691. To prevail on this claim, Reed is required to present some evidence that trial counsel's

decision not to have the drugs independently tested was unreasonable. This Reed has not done.

Reed's mere speculative assertions that independent testing "potentially could have proven

that the then destroyed marijuana plant samples either came from property not owned or controlled

by Reed and/or the subject marijuana plant samples were improperly taken without legal

authorization prior to the execution of the Search Warrant and subsequently Reed would not have

been held accountable for this marijuana[,]" does not constitute such evidence. Moreover, Reed

provides this Court with no insight into trial counsel's reason or choice not to independently analyze

the plants. For example, Reed does not claim he told trial counsel that the plants were not marijuana

or that he did not grow them, or that he even raised the possibility to counsel that the government's

own analysis was flawed or erroneous in some way. Based on the evidence in the record, there is

simply no indication that defense counsel had any reason to believe the plants were not marijuana

12

and were not grown by Reed, and Reed has failed to offer any basis on which to conclude trial counsel's failure to independently test the plants was unreasonable.

To the contrary, the decision to abandon efforts to independently test the marijuana and enter into a plea agreement appears to be a reasonable decision as it was beneficial to Reed because he received substantial benefits when he admitted his criminal conduct. Attorney Trant negotiated a plea bargain that resulted in a 180 month sentence for Reed, thus permitting Reed to avoid a possible mandatory life sentence. In addition, Reed was permitted to retain his property which was subject to criminal forfeiture, most notably, the family homestead. Given the record, Attorney Trant made a reasonable strategic decision to forgo an independent test of the marijuana and advise Reed to enter into the plea agreement.

Even assuming counsel was deficient for failing to pursue the testing of the marijuana, Reed has failed to demonstrate prejudice as his speculation of what might have been the result of the testing is insufficient to demonstrate he suffered any prejudice as a result of counsel's failure to independently test the marijuana plants. This speculation is insufficient to undermine confidence in the outcome of the trial, as required by *Stickland*.

In sum, there is no basis in the record for concluding counsel was deficient for deciding not to pursue the independent testing. Reed has failed to provide any support whatsoever for his claim that counsel was ineffective for failing to obtain independent testing of the marijuana plants. Reed's speculation that he might have been prejudiced by counsel's failure to pursue independent testing is insufficient to undermine confidence in the outcome of his case or demonstrate that but for counsel's alleged ineffectiveness, the result of the proceeding would probably have been different, as required by *Strickland*. Reed did not and has not ever alleged that the plants that were seized was

13

anything other than marijuana but rather, simply speculates that had counsel sought such testing, the results might possibly have been favorable to him. Reed's speculation that testing of the plants might have been favorable to him in some way does not entitle him to a evidentiary hearing or § 2255 relief, nor does it show that counsel acted ineffectively in failing to obtain the independent testing. Accordingly, Reed fails to set forth a constitutional violation or otherwise, demonstrate circumstances justifying § 2255 relief based on defense counsel's failure to independently test the marijuana samples.[1]

### 4. Plea Agreement

Reed's claim is confusingly pled and difficult to decipher. Reed claims counsel was constitutionally deficient in his representation of Reed in connection with his guilty plea because he did not explain the important details of the agreement to him and the agreement was presented at the last minute. However, Reed also contends Attorney Trant "never challenged the government's lack of photographs or accurate maps of the alleged marijuana growing areas which would have had great bearing on the volume of marijuana plants alleged in the written Plea Agreement." (Crim. Court File No. 153, p. 12).

Once again, Reed makes nothing more than a speculative claim when he contends counsel's failure to challenge the government's lack of photographs or accurate maps of the alleged marijuana

---

[1]     Counsel claims the government destroyed the marijuana samples after he initiated contact with them trying to determine why independent testing was not conducted. Although the Court would have preferred the government to have preserved the evidence upon notification of post conviction counsel, the fact that it did not has no impact on these proceedings. First, Reed has failed to demonstrate counsel did not make a reasonable strategic decision not to pursue independent testing. Second, Reed made the decision to enter a guilty plea, thus extinguishing the need to litigate the independent testing issue during his criminal proceedings. Consequently, any claim regarding the testing of the marijuana is without merit.

growing areas had a great bearing on the volume of marijuana plants to which he pleaded guilty to manufacturing and possessing with intent to distribute. This factually baseless claim does not establish counsel was deficient or that Reed suffered any prejudice due to counsel's failure to challenge the government's lack of photographs or accurate maps. This is so because Reed has failed to identify what a challenge to the government's lack of photos and accurate map would have revealed and how he was prejudiced. Accordingly, Reed is not entitled to relief on this claim.

Reed's contention that he does not remember signing the plea agreement is disingenuous because, in addition to the government announcing, during Reed's rearraignment, that the plea agreement was signed by the government, Reed, and Mr. Trant on September 20, 2005, Reed admitted, in Court, under oath, that he signed the plea agreement during his September 20, 2005 rearraignment. Moreover, Reed filed a *pro se* motion on December 11, 2006, requesting a copy of the plea agreement which he asserted he "signed . . . thirty minutes prior to appearing before the Court and pleading guilty." (Crim. Court File No. 144).[2]  Thus, Reed's claim that he does not remember signing the plea agreement is incredulous.

The Court turns to Reed's claim that counsel coerced him into entering a unintelligent, unknowing, and involuntary guilty plea and, as explained below, the Court concludes Reed has not demonstrated his guilty plea was coerced, unintelligent, unknowing, or involuntary. Therefore, he has failed to demonstrate defense counsel was ineffective.

---

[2]     The original plea agreement was not electronically docketed into the Court record, for some unexplained reason. The Clerk of Court has been unable to locate the original plea agreement signed by Reed. However, as the Court previously concluded in its order disposing of Reed's motion requesting a copy of the plea agreement, "this does not have any adverse impact on the legal validity of the defendant's guilty plea and the judgment of conviction." The Court provided Reed a copy of the unsigned plea agreement (Crim. Court File No. 145).

15

Reed claims that counsel did not sufficiently explain the plea agreement when he presented it to him at "the last minute." Reed asserts he "verbally entered into the Plea Agreement blindly and in an uninformed posture in accordance with Trant's specific instructions to give patterned and repetitive response to the Court's inquiry." (Crim. Court File No. 3, p. 5) In effect, Reed is claiming counsel coerced him into entering an unintelligent, unknowing, and involuntary plea.

Contrary to Reed's allegations, the record reflects Reed, while under oath, informed the Court that he had a full opportunity to discuss all of the facts of his case with Attorney Trant; that Reed was satisfied with Attorney Trant's representation; that no one forced or compelled him or put pressure on him to plead guilty; the decision to plead guilty was voluntary on his part; that he read the plea agreement; discussed the plea agreement with counsel; and signed the plea agreement the morning of the rearraignment (Crim. Court File No. 126). The rearraignment transcript demonstrates Reed's plea was not coerced and was intelligent, knowing, and voluntary as Reed repeatedly assured the Court he understood each right he was waiving and that he was entering the guilty plea of his own free will.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The Court of Appeals for the Sixth Circuit has instructed that a defendant's sentence will not be vacated on the ground that the guilty plea was coerced where the defendant was "carefully interrogated by the trial judge with respect to the offense committed," where the defendant was represented by "competent counsel," and where the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [his] rights." *United States v. Parker*, 292 F.2d 2, 3 (6th Cir. 1961); *see also Warner v. United States*, 975

16

F.2d 1207, 1212 (6th Cir. 1992) (A defendant's "decision to lie to the district court cannot amount to prejudice.").

Fed. R. Crim. P. 11 requires the Court to ask the defendant certain questions which creates a record that can be relied upon to insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). In determining whether a plea is coerced, a court considers the defendant's answers to the questions posed at his Rule 11 hearing, which carry a strong presumption of veracity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The provisions in Rule 11 specifically seek to ensure that entry of a plea is an intelligent and voluntary act. Great care is taken when accepting pleas under Rule 11 to place plea agreements on the record; ascertain the voluntariness and accuracy of the plea; provide detail advice to the defendant concerning his rights and the consequences of his plea; and to make a determination that the defendant understands these matters.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert. denied*, 426 U.S. 953 (1976)). The United States Supreme Court has explained that when the voluntariness of a guilty plea is being evaluated, courts should consider the following:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

17

The Court scrupulously followed the Rule 11 procedure and Reed is bound by the sworn statements he made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). The transcript of the rearraignment proceeding reflects the Court followed its standard procedure for accepting a plea of guilty under Rule 11 of the Federal Rules of Criminal Procedure. Reed's allegation that counsel coerced him into entering a plea that was involuntary, unknowing, and unintelligent is refuted by the record. His formal declarations made in person, in writing, and in open court, carry a strong presumption of truth, and stand in stark contrast to the claims he now makes. Reed's allegation of coerced, unintelligent, unknowing, and involuntary guilty plea is contradicted by the written plea agreement in this case (Crim. Court File No. 145) and by the Rule 11 proceedings in which Reed acknowledged under oath that his pleas were voluntary and he was pleading guilty because he was, in fact, guilty and the Court so found (Crim. Court File No. 126). Reed denied that anyone had threatened him or forced him to plead guilty. The Court made the following finding: "The Court finds that this defendant is competent and capable of entering an informed plea. The Court finds that his plea is knowledgeable and voluntary and supported by an independent basis in fact containing the essential elements of the offenses charged in the counts mentioned and specified in the second superseding indictment . . ." (Crim. Court File No. 126).

In light of Reed's sworn statements to the contrary during the criminal proceedings and the record before this Court, the Court concludes his claim that counsel coerced him into entering involuntary, unknowing, and unintelligent guilty plea is unsupported by facts, incredible, and unsupported by the record. Reed has not presented any evidence to support his contention. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical

issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Reed's factually unsupported allegations do not raise a constitutional issue.

Therefore, Reed is not entitled to an evidentiary hearing on this issue. If the Court were to allow an evidentiary hearing on this claim, it would undermine and eliminate the chief virtues of the plea bargain process -- speed, economy, and finality. *Blackledge*, 431 U.S. at 71-72. To permit collateral attacks on guilty pleas to be based on mere conclusory claims would make every guilty plea subject to attack under § 2255 and render the oral responses given by a defendant pursuant to Rule 11 meaningless. *Blackledge*, 431 U.S. at 74. The Court's conclusion that Reed's plea was not coerced but was voluntary, knowing, and intelligent, demonstrates counsel was not ineffective and Reed did not suffer any prejudice.

Even if Attorney Trant did not adequately explain the terms of the plea agreement, Reed cannot demonstrate any prejudice because the Court carefully explained the terms of the plea agreement to him during the plea colloquy. Petitioner acknowledged he was voluntarily and intelligently entering his guilty plea and admitted he was growing marijuana on various pieces of his property and that he possessed the firearms to further his marijuana growing operation.

Further, the Court observes that the plea agreement negotiated on Reed's behalf benefitted him substantially. First, the United States did not file an enhancement pursuant to 21 U.S.C. § 851. Given Reed's two prior drug felony convictions referenced in ¶¶ 59 and 60 of the PSR, he would have faced a mandatory life sentence on Count Four if the notice had been filed. Second, the government agreed to dismiss Counts One and Three which referenced Reed's manufacturing of marijuana on the Old Grandview Road property which is his family residence. This property was

19

not forfeited by the United States and Reed was allowed to maintain ownership of this property which reduced the forfeiture potential he would have faced if he had gone to trial and was convicted on all counts. Instead, Attorney Trant obtained a fifteen-year sentence for his client and insured that the family homestead stayed in Reed's possession. In addition, Attorney Trant was able to negotiate a plea where Reed did not forfeit any of his real property, but instead, forfeited $391,500.

In conclusion, Reed, making nothing more than self-serving allegations that he was coerced into entering an involuntary, unknowing, and unintelligent plea, has not satisfied his heavy burden of rebutting the presumption of the declarations he made in open court. Reed has failed to demonstrate his pleas were coerced, involuntary, unknowing, or unintelligent; thus, he has failed to demonstrate counsel was deficient. Accordingly, Reed's claim that his defense attorney was ineffective because he coerced or failed to explain his guilty plea must fail.

### 5. *Reed's Mental Condition at Time of Plea*

In his final claim, Reed asserts Attorney Trant was constitutionally ineffective because he did not "call a halt to the Court proceedings and have Reed medically evaluated" after he fainted during the rearraignment hearing. Thus, Reed implies, his guilty plea was not voluntary, intelligent, and informed and he did not understand the Court's admonishments as to the consequences of his guilty plea. Reed contends he does not remember signing the plea agreement and that his "plea of guilty should be vacated and he should be allowed to start over." (Crim. Court File No. 153, p. 15).

As previously explained, Reed's claim that he does not remember signing the plea agreement is inconsistent with his previous filings and the record. This claim lacks credibility because almost two years ago Reed filed a motion requesting a copy of his signed plea agreement. In that motion Reed stated he "signed a written plea agreement thirty minutes prior to appearing before the Court

and pleading guilty." (Crim. Court File No. 144).[3] Consequently, based on the record, the Court concludes Reed's allegation that he does not remember signing the plea agreement is not credible.

To the extent Reed alleges his plea was involuntary because he fainted during his rearraignment, he is not entitled to any relief because, as concluded *supra* in this memorandum opinion, Reed was competent and his plea was knowingly, voluntarily, and intelligently made. In addition, Reed has not demonstrated he suffered from medical problems preventing him from entering a knowingly, voluntarily, and intelligent plea. Emergency medical personnel were called to examine Reed after the hearing and he has not submitted any medical records or affidavits demonstrating that he was incoherent or in any way, mentally affected by the episode.

The record demonstrates that Attorney Trant was not deficient with respect to Reed fainting during the plea proceeding. It appears that after Reed entered his guilty plea to Count 10 and while the Court was explaining the elements of that count to him, he passed out. The Court permitted Reed and counsel to determine whether or not to proceed:

> THE COURT: What do you all want to do? Do you want to take a break here or do you want to go ahead, Mr. Reed?

> THE DEFENDANT: I'm fine. We got one more, don't we?

> THE COURT: Okay. I see you've got a little cut on your chin, which is understandable, which you hit right on the edge of that table there, that equipment. Did you want to--do you want to take a little break? I'll just leave it up to you, Mr. Trant, what do you think?

> THE DEFENDANT: I want to get it over with.

---

[3] The Court's Order responding to the motion explained that for whatever reason, the original plea agreement was unable to be found but "this does not have any adverse impact on the legal validity of the defendant's guilty plea and the judgment of conviction." (Crim. Court File No. 145).

MR. TRANT: He wants to get it over with, Your Honor.

THE COURT: We'll wrap it up here then pretty soon here. Okay. I was explaining to you, Mr. Reed, the elements of Count 10, which was the second structuring charge.

(Crim. Court File No. 126, pp. 23-24).

Thus, the proceeding continued at Reed's insistence and his responses to the Court's inquiries, after the fainting episode, were appropriate and coherent, and there is nothing in the record demonstrating this incident, in any way, impaired Reed's thinking or ability to understand what he was doing during his rearraignment. Although the Court is aware that Reed has some health problems, including a heart problem, he has failed to submit any credible proof that due to this fainting episode, his guilty pleas were involuntary, unknowing, and unintelligent.

The Court observed Reed during the rearraignment proceedings and his responses. There was nothing during the proceeding that indicated to the Court that Reed did not understand the nature of the charges against him, his plea, the plea process, the rights he was waiving, or that he suffered any mental impairment that affected the knowing and voluntary entry of his guilty plea. Moreover, Reed has not provided any credible evidence requiring the Court to vacate his guilty pleas. The fact that a defendant suffers from a fainting episode during his arraignment does not automatically render his guilty plea unconstitutional.

Accordingly, Reed's claim that counsel was ineffective for failing to halt the rearraignment proceedings because he fainted fails to state a claim for constitutionally ineffective assistance of counsel and does not afford him any § 2255 relief.

## V. CONCLUSION

Accordingly, Reed has failed to establish a plausible claim that would warrant an evidentiary hearing. *See United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2nd Cir. 1993) (noting that to prevail on a motion for hearing, petitioner must establish he has a plausible claim). Reed's claims are meritless. Reed has generally failed to support his claims with any facts or allegations. Legal conclusions unsupported by factual allegations are insufficient to entitle a petitioner relief under 28 U.S.C. § 2255. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974). Indeed, when a petitioner files a § 2255 motion, he must set forth facts entitling him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Reed fails to assert any factual allegations or offer any evidence to support his allegations. Accordingly, Reed's claims do not entitled him to § 2255 relief and his § 2255 motion will be **DENIED** (Crim. Court File No. 148).

A separate order will enter.


_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE